The STATE of Ohio, Appellant,

v.

EASTMAN, Appellee.

[Cite as *State v. Eastman,* 164 Ohio App.3d 585, 2005-Ohio-6624.]

Court of Appeals of Ohio,
Fifth District, Guernsey County.

No. 05CA000030.

Decided Dec. 14, 2005.

Daniel G. Padden, for appellant.

Charles E. McNight, for appellee.

HOFFMAN, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals the August 15, 2005 judgment entry of the Guernsey County Court of Common Pleas, which granted defendant-appellee James B. Eastman's motion to suppress.

### Statement of the Facts and Case

{¶ 2} On April 2, 2005, the Cambridge Police Department arrested appellee on drug-related charges. The matter proceeded through the discovery process,

during which appellee filed a motion to suppress. The trial court conducted a hearing on the motion. The following evidence was adduced at the hearing.

{¶ 3} Patrolman Dave Peoples of the Cambridge Police Department testified that at approximately 8:30 p.m. on April 2, 2005, he and Sergeant Hall were dispatched to 325 Dewey Avenue, Apartment 7, Cambridge, Ohio, to investigate a report of people smoking crack cocaine in the apartment. This apartment is leased by appellee. The officers parked their cruisers in an alley next to the apartment house and approached the house together. The officers crossed the front porch and knocked on the door of appellee's apartment. According to Patrolman Peoples, when appellee, with whom the officers were familiar, answered the door, the officers informed him that they had received a report of crack cocaine use. Appellee denied the truth of the report. The officers asked appellee if they could enter the apartment. When appellee asked their reason for wanting to come in, Patrolman Peoples responded that they wanted to come in because it was raining. Appellee invited the officers into the apartment.

{¶ 4} Patrolman Peoples testified that he walked two or three feet into the apartment and immediately observed on the kitchen table a clear plastic bag containing white powder. The officers believed the substance to be cocaine, and they took immediate possession of it. The officers also recovered additional items of drug paraphernalia. While the officers were speaking to appellee about the drugs and the paraphernalia, appellee advised them that there had been people in his apartment smoking crack and that he had taken a few hits.

{¶ 5} On cross-examination, Patrolman Peoples stated that the only reason he gave appellee for wanting to come inside was the fact that it was raining. Peoples also conceded that the covered porch provided adequate protection from the rain. The patrolman further noted that there was no appreciable amount of cocaine in the plastic bag itself, but the bag was covered with a residue.

{¶ 6} Appellee testified on his own behalf. He stated that the dimensions of the front porch were approximately five and one-half feet by seven and one-half feet. Appellee noted that the porch was covered by a roof, and he said, "You can't get wet if you're standing there." When asked specifically about the evening of April 2, 2005, appellee stated that he woke up at 10:30 p.m.[1] and explained that he always checks the clock because of the prescription medicine he takes. Appellee acknowledged that he had been drinking, but said that he was not drunk.

---

1. On the record, the trial court found that the events occurred at approximately 10:30 in the evening.

{¶ 7} Appellee recalled that he was asleep when he heard a knock at his door and a voice announcing, "Police." Believing it was his friends playing a joke, appellee took his time answering the door. After hearing a second knock, appellee opened the door and found two officers on his porch. Appellee noted that it was raining and the wind was blowing. The officers immediately asked appellee if they could come in out of the rain, and appellee obliged. Appellee testified that as soon as the officers came in the door, they handcuffed him and sat him down on a stool in the kitchen. Appellee did not recall the officers informing him that they were there to investigate a report of people smoking crack cocaine. Appellee acknowledged that he had just awakened from a dead sleep and would not remember such a statement if it had been made. The officers did not ask appellee's permission to search the house. The only reason the officers gave appellee for coming into the house was the weather. Appellee noted that the officers would not have gotten wet on the porch despite the inclement weather. When asked if he knew he had a right to refuse the officers permission to come into the house, appellee explained, "I just woke up from a dead sleep and I wasn't really fully awake. I was just being nice enough to let them in out of the weather." Upon completing their search, the officers asked appellee if he had been partying. Appellee advised the officers that there was a party at the apartment, but said that the only thing he had done was smoke weed and drink.

{¶ 8} On cross-examination, appellee explained that the prescription medicines he takes make him tired and make it difficult for him to wake up and become coherent. Although appellee heard the police identify themselves, he could not remember whether the officers told him they were there investigating a report of people smoking crack. Appellee stated that he allowed the officers into the apartment because of the rain, but did not know the reason for their call. Appellee also conceded that the officers did not force their way into his home, although he stated that he did feel a little intimidated by their presence. Appellee testified that he has a criminal history, but stated that he has always admitted his guilt when he is guilty. He said, "When I've been wrong I've always been truthful and honest with the court and showed the utmost respect."

{¶ 9} The parties completed the presentation of evidence and gave closing arguments. The trial court took a brief recess to review the issues. Upon reconvening, the trial court granted appellee's motion to suppress, finding that appellee's "consent was invalid because he was led to believe the officers wanted to come in out of the rain." The trial court concluded that the officers used deceptive means to gain entrance into the home in order to conduct the search. The trial court memorialized its decision by a judgment entry filed on August 15, 2005.

{¶ 10} It is from this judgment entry that the state appeals, raising the following assignments of error:

{¶ 11} "I. The trial court erred in finding that the state of Ohio failed to meet its burden of proof by clear and convincing evidence that defendant voluntarily consented to police officer's entry into his home.

{¶ 12} "II. The trial court erred in granting defendant's motion to suppress as defendant consented to officers of the Cambridge Police Department entering his residence."

## I, II

{¶ 13} Because the state's assignments of error are interrelated, we shall address those assignments together. In its first assignment of error, the state maintains that the trial court erred in finding the state had failed to prove by clear and convincing evidence that appellee's consent to enter his home was voluntarily given. In its second assignment of error, the state submits that the trial court erred in granting appellee's motion to suppress, because appellee had consented to the officers' entering his residence.

{¶ 14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726.

{¶ 15} Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

{¶ 16} Finally, assuming that the trial court's findings of fact are not against the manifest weight of the evidence and that it has properly identified the law to be applied, an appellant may argue that the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; and *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. As the United States Supreme Court held in *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶ 17} The state submits, under the totality of the circumstances, that appellee's consent to enter and search his home was voluntarily given. The state notes that the evidence clearly demonstrates that appellee was not in custody; therefore, the encounter was entirely consensual. The state adds that the police did not use coercive procedures to gain entrance into the house. Rather, the police were responding to reports of illegal drug activity. They knocked and announced their purpose, and they asked permission to come in out of the rain. There was no evidence to show that appellee objected in any way to the officers' entering his home. The state asserts that because appellee has a criminal history, he would have known of his right to refuse consent, even though the officers did not so advise him.

{¶ 18} On the record, the trial court made the following findings:

{¶ 19} "Sgt. Hall, after the defendant came to the door, asked if the police officers could come in reporting that they were there due to a report of people smoking crack cocaine. The defendant does not recall the officer stating they were there to investigate people smoking crack cocaine. What is clear in the record both from the testimony of Patrolman Peoples and the defendant is that Sgt. Hall asked if they could come in and almost contemporaneously therewith Patrolman Peoples said that it was raining and that was the reason that they wanted to go inside.

{¶ 20} "The Court has further in its finding of fact carefully reviewed Defendant's Exhibit '1.' Careful review of Defendant's Exhibit '1' does show a step and a porch and that porch would cover and protect anyone standing on the porch from rain. The testimony is that it was blowing rain. The Court is unable to determine looking at the picture, nor is there evidence before the Court, which direction wind was blowing or how wet the officers might have been getting.

{¶ 21} "In any event, the test of law for a consent search is for the Court to determine from a totality of the circumstances if there is clear and convincing evidence that the consent was freely and voluntarily given. * * *

{¶ 22} "[A] question of fact [can] be determined by the trial court from a totality of the circumstances with the burden of proof being on the prosecution to show that the consent was freely and voluntarily given. * * *

{¶ 23} "Here the Court is not finding that the officers falsely told the defendant that they wanted to * * * get in out of the rain but the Court finds that was deception as clearly the purpose for entering the residence by the police officers was to conduct a search of the residence. * * *

{¶ 24} "Ordinarily police may not deceptively gain entrance into a home and then claim that the occupant consented to the entry. Here the Court finds that the defendant's consent was invalid because he was led to believe that the officers

wanted to come in out of the rain. The Court further finds that the issue that the officers wanted to come in out of the rain to investigate was whether or not there were others in the residence smoking crack cocaine.

{¶ 25} "The Court, therefore, in the totality of the circumstances and facts before it in this case (particularly looking at Defendant's Exhibit '1' and the statement by Patrolman Peoples that as soon as Sgt. Hall asked if they could come in that [Peoples] said [that they wanted to come in] because [it was] raining) * * * finds from the totality of the circumstances and the condition of the defendant on the evening that there's no clear and convincing evidence that he voluntarily consented to have his premises searched.

{¶ 26} "The Court finds that the officers did not have plain view of the cocaine that was seized until they entered the residence so, therefore, plain view does not apply.

{¶ 27} "The Court further finds that the testimony of the defendant, James Eastman, who has been convicted of several felonies, is worthy of belief to this extent: That in the past when Mr. Eastman has been charged with something he has come before the Court and plead[ed] guilty and admitted his guilt."

{¶ 28} While we agree with the trial court's conclusion that appellee did not voluntarily consent to having his premises searched, we believe that the proper focus is on whether appellee voluntarily consented to allow the police to enter his residence. Based upon the facts presented, we conclude that he did voluntarily consent. Regardless of their ulterior motive (to look for evidence of drug usage), the officers' stated purpose (to get in out of the rain) was not deceptive, in and of itself. The fact that the porch offered some shelter from the rain and wind does not render appellee's consent involuntary. Appellee was free to deny entrance if he felt the porch provided sufficient shelter. Even if it did not, appellee was free to deny entrance.

{¶ 29} The trial court's entry recognizes that once the officers entered the residence, the cocaine was in plain view. Having concluded that the officers' entry into appellee's resident was lawful, we find that the plain-view doctrine applies and that the search and seizure of the evidence was not in violation of appellee's Fourth Amendment rights.

{¶ 30} Appellant's first and second assignments of error are sustained.

{¶ 31} The judgment of the Guernsey County Court of Common Pleas is reversed, and the matter is remanded to that court for further proceedings in accordance with this opinion and the law.

Judgment reversed
and cause remanded.

GWIN, P.J., and EDWARDS, J., concur.