OPINION *Page 2 
{¶ 1} Appellant Shawn M. Burris appeals his conviction in the Licking County Municipal Court, following a no contest plea, for reckless operation and OVI. The relevant facts leading to this appeal are as follows.
 {¶ 2} On March 18, 2007, at approximately 2:30 AM, Licking County Sheriffs Deputy Gus Moore observed a black, four-door Nissan rapidly accelerate from a restaurant parking lot onto Route 62 in the Village of Utica. The car was spinning its tires and racing its motor as it entered the roadway. The deputy effectuated a traffic stop, and proceeded to give appellant, the driver, field sobriety tests, including the horizontal gaze nystagmus ("HGN") test.
 {¶ 3} Appellant was arrested at the scene and charged with operating a motor vehicle while intoxicated (OVI), R.C. 4511.19(A)(1)(a), and reckless operation of a motor vehicle, R.C. 4511.20. Appellant entered a plea of not guilty to both charges on March 21, 2007.
 {¶ 4} On April 27, 2007, appellant filed a motion to suppress, to which the State responded via memorandum on May 3, 2007. The trial court conducted a suppression hearing on May 4, 2007. The court at that time heard testimony from Deputy Moore, as well as Deputy Chris Van Balen, who had assisted during the traffic stop. At the conclusion of the hearing, the trial court announced its decision to deny the motion to suppress. A judgment entry to that effect was filed on May 8, 2007.
 {¶ 5} Appellant entered a plea of no contest to both charges on May 4, 2007. The court thereafter found appellant guilty of both charges, and sentenced him, inter alia, to 30 days in jail, with 27 days suspended, and a fine of $300.00. *Page 3 
 {¶ 6} On May 21, 2007, appellant filed a notice of appeal. He herein raises the following two Assignments of Error:[1]
 {¶ 7} "I. TRIAL COURT COMMITED (SIC) HARMFUL ERROR WHEN IT DID NOT SUPPRESS THE HORIZONTAL GAZE TEST DUE TO THE OFFICER NOT CONDUCTING THE TEST IN SUBSTANTIAL COMPLIANCE WITH THE NATIONAL HIGHWAY AND TRAFFIC SAFETY MANUAL.
 {¶ 8} THE TRIAL COURT COMITTED (SIC) HARMFUL ERROR IN NOT GRANTING APPELLANT'S MOTION TO SUPPRESS THE STOP.
 I. {¶ 9} In his First Assignment of Error, appellant argues the trial court erred in failing to suppress the results of the officer's horizontal gaze nystagmus ("HGN") test performed on appellant. We disagree.
 {¶ 10} There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, *Page 4 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Eastman, 164 Ohio App.3d 585, 588, 843 N.E.2d 245,2005-Ohio-6624, citing State v. Curry (1994), 95 Ohio App.3d 93,641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623,620 N.E.2d 906; Guysinger, supra. In the case sub judice, we find appellant's challenge to the suppression motion falls under the third method.[2]
 {¶ 11} In State v. Boczar (2007), 113 Ohio St.3d 148, 2007-Ohio-1251, the Ohio Supreme Court upheld the constitutionality of R.C. 4511.19(D)(4)(b), which provides that the results of field sobriety tests are admissible when the tests are administered in substantial compliance with testing standards. Id. at ¶ 28.
 {¶ 12} Deputy Moore testified at the suppression hearing that his most recent training under the NHTSA guidelines was in May 2003, utilizing the 2002 edition of the NHTSA manual. Tr. at 9. He also recalled periodic updates from his superiors regarding some of the 2004 and 2006 revisions to the manual. Tr. at 24-25. Appellant presently contends that Deputy Moore's testing fell short of the 2006 manual procedures by (1) not eliminating all conflicting light sources, (2) not checking *Page 5 
appellant's eyes for resting nystagmus, and (3) not checking for "distinct and sustained" nystagmus. Appellant's Brief at 9.
 {¶ 13} A review of the record reveals Deputy Moore stated he actually faced appellant away from the cruiser's overhead lights when he performed the HGN test. Tr. at 25. The deputy also testified that he did not observe any reflections from the vehicles or other sources which would have interfered with the test. Tr. at 27. Furthermore, while the deputy indicated he had not checked for resting nystagmus, this test is generally relevant to testing for the influence of drugs such as PCP. See 2006 NHTSA Manual at VIII-4. Finally, the 2006 Manual states that "[d]istinct and sustained nystagmus will be evident when the eye is held at a maximum deviation for a minimum of four seconds." Id. at VIII-5. Deputy Moore testified that he had observed "jerking and bouncing" in each of appellant's eyes after holding the pen at maximum deviation for more than four seconds. Tr. at 11. During cross-examination, he expounded that he understood that he was supposed to be checking for distinct and sustained nystagmus at maximum deviation, and that is what he had meant by "excessive bouncing or jerking." Tr. at 28.
 {¶ 14} Based on our review of the record, we hold the trial court did not err in determining that the State had substantially complied with standardized testing procedures for the HGN test. The motion to suppress was therefore properly denied in this regard.
 {¶ 15} Appellant's First Assignment of Error is overruled. *Page 6 
 II. {¶ 16} In his Second Assignment of Error, appellant argues the trial court erred in failing to suppress the results of the traffic stop, which was based on the deputy's observed operation of the Nissan by appellant. We disagree.
 {¶ 17} When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. State v. Bobo (1988),37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus. When police observe a traffic offense being committed, the initiation of a traffic stop does not violate Fourth Amendment guarantees, even if the stop was pretextual or the offense so minor that no reasonable officer would issue a citation for it. State v. Mullins, Licking App. No. 2006-CA-00019,2006 WL 2588770, ¶ 26, citing Whren v. United States (1996), 517 U.S. 806,116 S.Ct. 1769, 1774-75. "* * * [Reasonable suspicion is not proof beyond a reasonable doubt, but is judged by all the surrounding circumstances."State v. Boyd (Oct. 10, 1996), Richland App. No. 96-CA-3.
 {¶ 18} In the case sub judice, at the suppression hearing, Deputy Moore recalled first hearing "the engine and the gravel and the asphalt." Tr. at 20. The exchange between defense counsel and Deputy Moore continued as follows:
 {¶ 19} "Q. * * * Okay, and at what point did you see a vehicle that you believed to be making the noise? Where was that vehicle when you first observed it?
 {¶ 20} "A. It was partially, I mean within a matter of a split second, it was in the gravel lot and then onto Route 62 eastbound in a cloud of dust.
 {¶ 21} "Q. What's the speed limit on 62? *Page 7 
 {¶ 22} "A. That portion of it, I believe, is twenty-five. It's in the Village of Utica. It's either twenty-five or thirty-five there.
 {¶ 23} "Q. And how far away is the vehicle from you, from where you are? Approximately. I know you didn't get out and measure.
 {¶ 24} "A. Fifty to seventy-five yards, maybe.
 {¶ 25} "Q. The parking lot that the vehicle was coming out of was a gravel parking lot?
 {¶ 26} "A. Yes sir.
 {¶ 27} "Q. So it goes from gravel to paved there? The road is paved?
 {¶ 28} "A. Yes.
 {¶ 29} "Q. And once the vehicle, there was a vehicle spinning it's [sic] tires on the gravel?
 {¶ 30} "A. It started on the gravel. Ended up on the hard road or asphalt, whatever you want to call it.
 {¶ 31} "Q. And then he must have caught traction or slowed down or something?
 {¶ 32} "A. Right, it wasn't a continuous burnout. It wasn't National Trails, but it, he did spin the tires on the asphalt, as well.
 {¶ 33} "Q. Five or ten seconds? Briefly? A minute?
 {¶ 34} "A. From the time it started spinning in the gravel `til it's [sic]
 {¶ 35} "Q. No, on the roadway.
 {¶ 36} "A. Second, two seconds. Again, it wasn't. . .
 {¶ 37} "Q. Okay, I'm just trying to get a. . . *Page 8 
 {¶ 38} "A. Sure.
 {¶ 39} "Q. A good feel for it. So one to two seconds on the pavement there, then when he hit's [sic] the pavement, you talk about a traffic light. Now, this traffic light, I assume is somewhere about where you are. Seventy-five yards down the road, fifty yards down the road.
 {¶ 40} "A. The traffic light would have been twenty or twenty-five yards. . .
 {¶ 41} "Q. Further?
 {¶ 42} "A. . . . east of me.
 {¶ 43} "Q. So seventy-five to a hundred yards then?
 {¶ 44} "A. I was between the traffic lot and the Pioneer lot on the north side of the road at the Marathon gas station.
 {¶ 45} "Q. And you said fifty to seventy-five yards was your guesstimate, which I understand is a guess.
 {¶ 46} "A. Sure.
 {¶ 47} "Q. And then another twenty-five yards from there to the light.
 {¶ 48} "A. Right, and there was (sic) cars stopped at the light, as well, so he was not the first one at the light. There was at least two cars that he pulled up behind.
 {¶ 49} "Q. Okay, so a little short of that then?
 {¶ 50} "A. Correct.
 {¶ 51} "Q. And does he stop?
 {¶ 52} "A. For the traffic light?
 {¶ 53} "Q. Uh huh.
 {¶ 54} "A. Yeah, the light was red. Yes." Tr. at 20-22. *Page 9 
 {¶ 55} R.C. 4511.20(A) states as follows: "No person shall operate a vehicle, trackless trolley, or streetcar on any street or highway in willful or wanton disregard of the safety of persons or property." InState v. Patton (October 7, 1993), Montgomery App. No. 13929, the Second District Court of Appeals cautioned that "[a] momentary squealing of tires, lasting a second or less, is not indicative of reckless operation." However, upon review of the record, including the portion summarized above, and given the fact that the incident took place inside the village limits, when the lateness of the hour made for decreased visibility of any pedestrians and other vehicles, we find the deputy's traffic stop for the charged offense of reckless operation was constitutionally valid.
 {¶ 56} Appellant's Second Assignment of Error is therefore overruled.
 {¶ 57} For the foregoing reasons, the judgment of the Municipal Court, Licking
County, Ohio, is hereby affirmed.
Wise, J., Gwin, J., concurs.
Hoffman, P. J., concurs separately.
[1] The table of contents page of appellant's brief sets forth the second assigned error as follows: "THE TRIAL COURT COMITTED (SIC) HARMFUL ERROR IN NOT EXCLUDING THE BAC DATAMASTER TEST RESULTS." This asserted error is not pursued in the brief.
[2] Appellant also suggests that because the State chiefly relied on the 2002 NHTSA manual at the suppression hearing, the trial court failed to apply the correct test by not reverting to the strict compliance standard of State v. Homan (2000), 89 Ohio St.3d 421, 732 N.E.2d 952,2000-Ohio-212. We find no merit in this contention. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Licking County, Ohio, is affirmed. Costs assessed to appellant. *Page 1