[Cite as *State v. Tolle*, 2021-Ohio-3401.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | CASE NO. CA2020-10-015 |
| Appellee, | : | O P I N I O N<br>9/27/2021 |
| | : | |
| - vs - | : | |
| | : | |
| APRIL I. TOLLE, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 19 CR 13167

Martin P. Votel, Preble County Prosecuting Attorney, and Kathryn M. West, Assistant Prosecuting Attorney, for appellee.

Michael Mills, for appellant.

**M. POWELL, J.**

{¶ 1}   Appellant, April I. Tolle, appeals her conviction in the Preble County Court of Common Pleas for deception to obtain a dangerous drug.  She asserts that the evidence presented by the state was insufficient to support her conviction and that her conviction was against the manifest weight of the evidence.

{¶ 2}   On the morning of November 1, 2019, appellant and John Carver each had

medical appointments at the Preble County Medical Center in Eaton, Ohio. The two did not know each other, and their appointments were scheduled with different doctors whose offices were located in different parts of the building. Carver saw Physician's Assistant Shelley Barney at the Office of Dr. Mark Vosler and received a prescription for alprazolam, commonly known as Xanax. Appellant saw Amy Walworth, a Certified Nurse Practitioner at the office of Dr. Jill Vosler and received a prescription for lorazepam, commonly known as Ativan.

{¶ 3} Before he left the doctor's office, Carver told the physician's assistant he was experiencing heartburn. She directed him to the laboratory to submit to an electrocardiogram ("EKG") test. Carver put the Xanax prescription into the pocket of the hooded sweatshirt he was wearing and proceeded to the laboratory. Carver testified that he walked to the laboratory, which was located in a different part of the same building, checked in, and sat down in the waiting area for "a few moments" before being called in. He did not recall anyone else in the waiting room while he was there, though he noted someone went to the counter as he was being called in. After his EKG, Carver left the building, returned to his vehicle, and drove to the Eaton Walmart. When he arrived, he exited his vehicle, and reached into his sweatshirt pocket to retrieve his prescription but discovered it was not there. Carver returned to the medical center and inquired with both the laboratory and Dr. Mark Vosler's office whether his prescription had been turned in. He was advised to retrace his steps. Carver even drove back to Walmart and checked the parking lot but was still unable to find the prescription. Finally, he returned to the doctor's office and was given a new, identical prescription.

{¶ 4} While Carver was searching for his prescription, appellant arrived at the Eaton Walmart and presented Carver's prescription to the lead pharmacy technician, Kimberly Brooks. Brooks testified that ordinarily, when a prescription is presented, she asks the

customer, "Do you plan to wait on this?" Because Brooks knew Carver, having served him at the pharmacy for over a decade, she instead asked appellant, "Do you plan to wait on this *for him*?" Appellant responded in the affirmative. Shortly after this, Carver arrived at the pharmacy and presented his replacement prescription. When Brooks asked whether Carver knew appellant, he responded that he did not, though he had seen her earlier at the medical center. Brooks then called the police, and Officer Thomas Huling of the Eaton Police Department responded and questioned Brooks, Carver, and appellant. Officer Huling also telephoned Dr. Jill Vosler's office and spoke by telephone with Kristy King, the practice manager. Following his conversation with King, Officer Huling arrested appellant.

{¶ 5} Based on this incident, appellant was indicted in December 2019 for three felony counts: one count of illegal processing of drug documents; one count of deception to obtain a dangerous drug; and one count of theft from a person in a protected class. The matter proceeded to a jury trial. The state dismissed the illegal processing count on the morning of trial. At trial, Officer Huling, Carver, King, and Brooks testified on behalf of the state. Appellant did not testify or offer any exhibits. The jury found appellant guilty of deception to obtain a dangerous drug in violation of R.C. 2925.22(A) and not guilty of theft from a person in a protected class. Appellant was sentenced to three years of community control and 100 hours of community service.

{¶ 6} Appellant now appeals her conviction for deception to obtain a dangerous drug, raising one assignment of error:

{¶ 7} THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT APPELLANT'S CONVICTION OF DECEPTION TO OBTAIN A DANGEROUS DRUG AND THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 8} Appellant argues that her conviction for deception to obtain a dangerous drug is not supported by sufficient evidence and is against the manifest weight of the evidence

because the state failed to prove that she deceptively procured the administration or dispensing of a dangerous drug or deceptively procured a prescription for a dangerous drug.

{¶ 9} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52; *State v. Grinstead*, 12th Dist. Butler Nos. CA2010-06-150, CA2010-07-163, CA2010-07-164, CA2010-07-165, CA2010-07-166, CA2010-07-167, CA2010-07-180, 2011-Ohio-3018, ¶ 10. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 10} Conversely, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses

and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Barnes* at ¶ 81, citing *Thompkins* at 387.

{¶ 11} R.C. 2925.22(A) states in part, "No person, by deception, shall procure the administration of, a prescription for, or the dispensing of, a dangerous drug." A "dangerous drug" as used in the statute is defined as a "drug [which] may be dispensed only upon a prescription."[1] Under the statute, Xanax is a dangerous drug. "Administration" as used in the statute is defined as, "the direct application of the drug, whether by injection, inhalation, ingestion, or any other means to a person or animal."[2] "Dispensing", as used in the statute means "to sell, leave with, give away, dispose of or deliver."[3] Finally, a "prescription," for purposes of the statute is the "written, electronic, or oral order for drugs or combinations or mixtures of drugs to be used by a particular individual or for treating a particular animal, issued by a licensed health professional authorized to prescribe drugs."[4]

{¶ 12} "Deception" as an element of the offense is defined by R.C. 2925.01(JJ) and R.C. 2913.01(A) as:

> knowingly deceiving another or causing another to be deceived
> by any false or misleading representation, by withholding
> information, by preventing another from acquiring information,
> or by any other conduct, act, or omission that creates, confirms,
> or perpetuates a false impression in another, including a false
> impression as to law, value, state of mind, or other objective or

---

1. See R.C. 2925.01(C), incorporating by reference the definition contained in R.C. 4729.01(F)(1)(a).

2. See R.C. 2925.01(A), incorporating by reference the definition contained in R.C. 3719.01(A).

3. See R.C. 2925.01(A), incorporating by reference the definition contained in R.C. 3719.01(E).

4. See R.C. 2925.01(B), incorporating by reference the definition contained in R.C. 4729.01(H)(1).

subjective fact.

{¶ 13} Thus, a person may violate the statute by procuring either (1) the administration of a dangerous drug; (2) a prescription for a dangerous drug; or (3) the dispensing of a dangerous drug, by deception.

{¶ 14} Obviously, appellant procured neither the administration nor dispensing of a dangerous drug, as appellant was arrested, and the prescription never filled. The state does not maintain otherwise. Thus, our focus is upon whether the evidence presented by the state at trial was sufficient to find that appellant used deception to procure Carver's prescription.

{¶ 15} At trial, Officer Huling testified that when he confronted appellant, she claimed that she had not looked at the prescription and had assumed it was the one she received from Dr. Jill Vosler's Office. Officer Huling spoke by telephone to King, the practice manager at Dr. Jill Vosler's Office, who confirmed appellant had been a patient there the day of the incident, and that she had not been prescribed Xanax. King herself testified that her office did not typically prescribe Xanax, that Carver had never been a patient at the office, and that she specifically remembered personally handing appellant her prescription for Ativan because it is a scheduled drug. Given the distance between the two doctors' offices, the fact that each office uses different, preprinted prescription forms showing the providers, and the fact there is no staffing overlap between the two offices, appellant's contention that she was given the wrong prescription by Dr. Jill Vosler's office was patently incredible. Nonetheless, appellant somehow came into possession of the prescription.

{¶ 16} The state argues that by choosing not to return the prescription to the doctor's office when she came into possession of it, but rather presenting it to the pharmacy to be filled, appellant used deception to procure the prescription. We agree that appellant acted deceptively when she retained Carver's prescription and presented it to be filled. However,

appellant's deceptive conduct following her procurement of the prescription is not relevant to whether she employed deception to procure the prescription in the first instance. Any deceptive conduct in retaining, possessing, or presenting the prescription is relevant only if appellant had been successful in having the drug dispensed or administered, which she was not.

{¶ 17} Our dissenting colleague construes the statutory language prohibiting procurement of a dangerous drug by deception as prohibiting deception to procure a dangerous drug. However, the gist of the offense is "procurement by deception," not "deception to procure." The former focuses on the result of the deception and the latter only upon the purpose of the deception. The statutory language is clearly concerned with whether the deception resulted in the procurement of either the administration or dispensing of a dangerous drug or a prescription for a dangerous drug and not merely with what an offender hoped to accomplish by engaging in deception. The dissent's analysis ignores the "shall procure" element of the offense.

{¶ 18} The state suggests that appellant stole the prescription from Carver while he was undergoing the EKG. However, this is pure, unfounded speculation. It is as likely that Carver's prescription fell from his sweatshirt pocket at the medical center or in the Walmart parking lot when he went to have it filled and was found by appellant. Finding a lost prescription does not involve "deception" as defined by R.C. 2913.01(A), even when one later attempts to use that prescription deceptively.[5]  All speculation aside, the record is devoid of any evidence regarding the circumstances under which appellant came to

---

5. Our obligation is to read a statute as written, not as we would prefer it to read. *State v. Babyak*, 12th Dist. Madison No. CA2019-08-025, 2020-Ohio-325, ¶ 13 ("[W]e are constrained to apply the statute as written and cannot rewrite the statute to say something it does not."). It is the General Assembly's responsibility to enact legislation to criminalize deceptively presenting a prescription to be filled as occurred here. *State v. Anderson*, 12th Dist. Clermont No. CA2010-03-019, 2010-Ohio-5068, ¶ 21 ("Any reforms to the legislation must be undertaken on the floor of the General Assembly * * * not in our courtroom.")

possess Carver's prescription from which it may be determined that she procured it by deception. Viewing the evidence in a light most favorable to the prosecution, no rational trier of fact could have found beyond a reasonable doubt that appellant procured Carver's prescription by deception.[6]

{¶ 19} Upon thoroughly reviewing the evidence, we find that the state failed to present sufficient evidence to allow the jury to conclude beyond a reasonable doubt that appellant committed the offense of deception to obtain a dangerous drug. Because we find appellant's sufficiency challenge dispositive of this matter, we need not review her manifest weight challenge.

{¶ 20} Appellant's assignment of error is sustained.

{¶ 21} Judgment reversed and appellant is discharged.

PIPER, P.J., concurs.

S. POWELL, J., dissents.


**S. POWELL, J., dissenting.**

{¶ 22} To secure a conviction against appellant for deception to obtain a dangerous drug in violation of R.C. 2925.22(A), the state was required to prove beyond a reasonable doubt that appellant used "deception" to procure "the administration of, a prescription for, or the dispensing of, a dangerous drug," like Xanax. After a thorough review of the record, I find the state presented sufficient evidence for the jury to find beyond a reasonable doubt that appellant used deception to procure Carver's prescription that she then presented to the pharmacy in an effort to have the prescription filled for herself rather than its intended

---

6. We do not, as our dissenting colleague suggests, lightly substitute our judgment for that of the jury. On the contrary, it is our duty as a reviewing court to ensure there is sufficient evidence supporting every element of an offense before affirming a conviction. Rest assured, we carefully considered the record and the statutory language and do not act lightly in reversing appellant's conviction.

recipient, Carver. I also find appellant's conviction for deception to obtain a dangerous drug was not against the manifest weight of the evidence. Therefore, I respectfully dissent for I would affirm appellant's conviction.

{¶ 23} The evidence at trial established that appellant was not given Carver's prescription by anyone at either her or Carver's doctors' offices. There was also no direct evidence presented at trial that appellant was given Carver's prescription by Carver himself. Yet, there is no dispute that appellant did, in fact, come into possession of Carver's prescription sometime after Carver received the prescription from his doctor. The evidence at trial further established that once appellant was in possession of Carver's prescription that appellant did not return Carver's prescription to either her or Carver's doctors' offices, nor did appellant notify the pharmacy where she attempted to fill Carver's prescription that the prescription was not hers.

{¶ 24} The evidence at trial instead established that appellant presented Carver's prescription to the pharmacy in an effort to have the prescription filled for herself rather than for its intended recipient, Carver. Appellant did this by advising the lead pharmacy technician, Kimberly Brooks, that she planned on waiting at the pharmacy while the prescription was being filled "for him," i.e., for Carver, thereby perpetuating the false impression that she was authorized to fill Carver's prescription – and take possession of Carver's medication – on Carver's behalf. Although circumstantial, when reviewing the totality of the circumstances, I believe this evidence fully supports the jury's verdict finding appellant guilty of deception to obtain a dangerous drug in violation of R.C. 2925.22(A). *See State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, ¶ 112 ("'[c]ircumstantial evidence and direct evidence inherently possess the same probative value * * *'"), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus.

{¶ 25} Pursuant to R.C. 2901.05(E), the term "reasonable doubt" means "a doubt

based on reason and common sense." Given its verdict acquitting appellant of theft from a person in a protected class, it is clear that the jury thoroughly reviewed the evidence and used its reason and common sense to find that while appellant did not *steal* Carver's prescription, appellant did use *deception* to obtain Carver's prescription prior to presenting it to the pharmacy. Therefore, when viewing the evidence in a light most favorable to the prosecution, and when applying basic reasoning and common sense to the evidence presented at trial, I would find the jury's verdict finding appellant guilty of using deception to obtain a dangerous drug was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶ 26} In reaching this decision, I note the well-established principle that "an appellate court, when examining the evidence offered at trial, sits as a 'thirteenth juror.'" *State v. Laseur*, 12th Dist. Warren Nos. CA2002-10-117 and CA2002-11-121, 2003-Ohio-3874, ¶ 17, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). However, this does not mean that this court may simply step in and reverse a jury's finding of guilt whenever this court sees fit. *See id.* at ¶ 18 (although an appellate court sits as the "thirteenth juror" this does not allow "a reviewing court to lightly substitute its judgment for that of the jury"). It is instead well-established that this court's discretionary power to reverse a conviction should only be exercised in the exceptional case where the evidence weighs heavily against the conviction. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 142. This is not the exceptional case where the evidence weighs heavily in favor of acquittal, nor do I find appellant's conviction resulted in a manifest miscarriage of justice requiring appellant's conviction be reversed and a new trial ordered.

{¶ 27} For the reasons outlined above, and because I find appellant's conviction for deception to obtain a dangerous drug in violation of R.C. 2925.22(A) was supported by sufficient evidence and not against the manifest weight of the evidence, I respectfully

dissent for I would affirm appellant's conviction.