[Cite as *State v. Estep*, 2022-Ohio-245.]

.

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2021-07-016 |
| | : | O P I N I O N |
| - vs - | | 1/31/2022 |
| | : | |
| TROY A. ESTEP, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20200269


Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.


**PIPER, P.J.**

{¶1} Appellant, Troy A. Estep, appeals from his conviction in the Fayette County Court of Common Pleas for violating a protection order.

{¶2} In 2018, appellant's estranged wife, Karen Estep, obtained a domestic violence civil protection order ("DVCPO") against appellant. The DVCPO prohibited appellant from initiating or having any contact with Karen, and provided that appellant was not to be within 500 feet of Karen, or any place that appellant knew or should know Karen

was likely to be. The DVCPO specifically provided that "[i]f [appellant] accidentally comes in contact with [Karen] in any public or private place, [appellant] must depart *immediately*." (Emphasis sic.). The DVCPO is effective until August 2023.

{¶3} Prior to the incident at issue, and as stipulated to by the parties, appellant was previously convicted of violating a protection order. Subsequently, on October 23, 2020, appellant was charged with one count of violating a protection order with a prior in violation of R.C. 2919.27(A)(1) and (B)(3). The charge stemmed from an encounter between appellant and Karen at a gas station in Fayette County on October 1, 2020. Thereafter, appellant was indicted in two additional cases for violating a protection order. Those charges arose from allegations that appellant was within 500 feet of Karen on two separate occasions in March 2021. On April 7, 2021, the three cases were joined for trial.

{¶4} On June 29, 2021, the matter proceeded to a jury trial. At trial, Karen testified that in the late morning of October 1, 2020, she went to the Mobil gas station in Washington Court House.[1] After arriving, Karen noticed appellant at one of the gas pumps, at which point appellant began "cussing [Karen] out [and] threatening [her] life[.]" Specifically, Karen testified appellant stated, "[Y]ou fucking bitch, you put me in prison, I am going to kill you. You are going to die bitch." Karen then entered the gas station and called the police.

{¶5} The state also presented testimony from Jeffrey Gorman. Gorman testified that he was present at the Mobil gas station on October 1, 2020 and heard Karen and appellant arguing outside before Karen entered the convenient store area of the gas station and called the police. Gorman testified he heard Karen yell that appellant "had to leave because she had a protection order against him," to which appellant replied that he wished

---

1. Counsel for the state and the defense presented evidence relating to each of the three charges; however, only the charge stemming from the incident on October 1, 2020 is at issue on appeal. Thus, we will limit our summary and analysis to the testimony presented relating to that incident.

Karen was dead and that he would like to kill her. Although Gorman was inside the gas station at the time of the argument, and therefore did not physically observe the incident, he was familiar with appellant and his voice, and was certain it was appellant yelling at Karen. Gorman remained at the gas station until police arrived and provided a statement to the responding officer.

{¶6} Tina Neanover, a former employee of the Mobil gas station, testified that she was working on October 1, 2020. During her shift, Neanover became aware that a couple was arguing near the station's gas pumps. At that point, Neanover heard some yelling from outside the store and observed a man and a woman arguing outside of their vehicles near gas pump number three. Neanover also provided a statement to the responding officer.

{¶7} Appellant denied that he engaged in a verbal altercation with Karen, and instead accused Karen of initiating the contact and yelling at him while he waited to leave the gas station. In his defense, appellant called Joshua Hudson and Brandon Bennett, both friends of appellant's who were with him at the Mobil gas station on October 1, 2020. Hudson testified that when he, Bennett, and appellant arrived at the gas station, appellant remained in the vehicle while Hudson went inside the store and Bennett filled the vehicle up with gas. Upon exiting the store, Hudson saw Karen walking and shouting towards appellant's vehicle. Karen did not appear scared but was angry. According to Hudson, appellant was anxious to get out of the area and he did not respond to Karen.

{¶8} Bennett similarly testified, and indicated appellant filled the vehicle with gas at the pump, while Bennett remained in the vehicle and Hudson went into the store. Bennett observed Karen approach their vehicle while waving and smiling. Upon realizing appellant was uninterested in conversing with her, Karen became "pretty upset." According to Bennett, appellant did not make any statement to Karen and wanted her to stay away from him.

{¶9} The case was submitted to the jury, which found appellant guilty of violating the DVCPO on October 1, 2020 and further found that appellant had a prior conviction for violating a protection order. The jury found appellant not guilty of the remaining two charges. The trial court then sentenced appellant to 12 months in prison, with 107 days of jail time credit.

{¶10} Appellant now appeals from his conviction, raising two assignments of error for our review.

{¶11} Assignment of Error No. 1:

{¶12} THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST THE APPELLANT, WHICH WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶13} Assignment of Error No. 2:

{¶14} THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT AGAINST APPELLANT, WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} Appellant argues on appeal that his conviction for violating a protection order was not supported by sufficient evidence and was against the manifest weight of the evidence. Appellant does not contest that the DVCPO existed to protect Karen as of October 1, 2020 or that he had a prior conviction for violating a protection order. Rather, appellant argues that his witnesses were more credible than Karen, Gorman, and Neanover, and that the evidence established he did not engage in a verbal altercation with Karen at the gas station that day.

{¶16} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind

of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶17} Conversely, a manifest weight of the evidence challenge examines the "'inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other.'" *State v. Ostermeyer*, 12th Dist. Fayette No. CA2021-01-002, 2021-Ohio-3781, ¶ 35, quoting *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Tolle*, 12th Dist. Preble No. CA2020-10-015, 2021-Ohio-3401, ¶ 10. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *State v. McMurray*, 12th Dist. Preble No. CA2020-08-013, 2021-Ohio-3562, ¶ 11.

{¶18} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *Thompkins* at 386. "Nevertheless, '[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency.'" *Ostermeyer* at ¶ 36, quoting *State v. Billingsley*, 12th Dist. Butler No. CA2019-05-075 and CA2019-05-076, 2020-Ohio-2673, ¶ 15.

{¶19} Appellant was convicted of violating a protection order in violation of R.C.

2919.27(A)(1), which provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued * * * pursuant to section 2919.26 or 3113.31 of the Revised Code." When an offender has a prior conviction for violating a protection order, the offense is a felony of the fifth degree. R.C. 2919.27(B)(3). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or to be of a certain nature." R.C. 2901.22(C). Furthermore, "[a] person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." *Id.*

{¶20} Appellant argues the jury clearly lost its way in finding him guilty of violating the DVCPO on October 1, 2020 because the defense's evidence "far outweighed that of the state." Specifically, appellant claims that the state's evidence from Karen, Gorman, and Neanover was less credible than the defense's two eyewitnesses who testified appellant did not say anything to Karen.

{¶21} After a review of the entire record, we find that appellant's conviction is not against the manifest weight of the evidence. As noted above, the jury heard testimony from Karen that appellant engaged in a verbal altercation with her at the gas station, which involved appellant yelling, cursing at, and threatening Karen. This testimony was corroborated by Neanover and Gorman, who testified they were present at the gas station during the incident and heard the argument. While appellant claims Neanover and Gorman's testimony is not credible because they did not see the incident, the jury was in the best position to judge their credibility and determine what weight to give to their testimonies. *State v. Cooperstein*, 12th Dist. Warren No. CA2018-09-117, 2019-Ohio-4724, ¶ 71. Additionally, despite evidence that Neanover and Gorman did not observe the entire

incident, the record reflects Neanover saw a man and woman arguing outside the gas station on the date in question, and Gorman, who is familiar with Karen and appellant, indicated he was certain the voice he heard threatening Karen was appellant's voice. Thus, if the jury believed the state's witnesses, it did not create a manifest miscarriage of justice in concluding that appellant violated in DVCPO by having contact with Karen at the gas station and electing to argue with Karen rather than departing immediately.

{¶22} Although appellant implies that the presence of conflicting evidence presented by other witnesses means that Karen's testimony was unreliable, we disagree. Rather, "'when conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.'" *State v. Cephas*, 12th Dist. Butler No. CA2021-05-051, 2021-Ohio-4356, ¶ 16, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17; *see also State v. Jackson*, 12th Dist. Butler No. CA2001-10-239, 2002-Ohio-4705, ¶ 48 ("A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact"). Consequently, although the defense presented evidence that Karen was the aggressor and that appellant did not speak to or yell at Karen that day, the jury, as factfinder, clearly determined that the state's witnesses were credible, and appellant's were not.

{¶23} Given the evidence presented at trial, the jury was entitled to reject appellant's version of events, including that he did not speak to or argue with Karen at the gas station. Likewise, the jury was free to conclude that the encounter was a result of appellant's reckless actions at the gas station. Accordingly, in making its decision of which witnesses to believe and which to disbelieve, we conclude the jury did not lose its way or create a manifest miscarriage of justice.

{¶24} Furthermore, to the extent appellant claims his conviction is against the

manifest weight of the evidence because Karen was allegedly not afraid of appellant at the gas station but was "smiling and waving," such a fact does not preclude the jury from finding appellant guilty of violating a protection order.  *See State v. Thacker*, 12th Dist. Warren No. CA2019-06-058, 2020-Ohio-1318, ¶ 65.  It is not an element of R.C. 2919.27(A)(1) that individuals protected by a protection order feel fear when a defendant violates the order.

{¶25}  After reviewing the record, weighing inferences, and examining the credibility of the witnesses, we find that appellant's conviction for violating a protection order is supported by sufficient evidence and is not against the manifest weight of the evidence.  As such, appellant's assignments of error are without merit and are therefore overruled.

{¶26}  Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.