[Cite as *State v. Hooks*, 2022-Ohio-4132.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|                      |   |                          |
|----------------------|---|--------------------------|
| STATE OF OHIO,       | : | CASE NO. CA2021-12-148   |
| Appellee,            | : | O P I N I O N<br>11/21/2022 |
|                      | : |                          |
| - vs -               | : |                          |
|                      | : |                          |
| RYAN HARRISON HOOKS,  | : |                          |
| Appellant.           | : |                          |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2019-03-0438

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher Pagan, for appellant.

**M. POWELL, P.J.**

{¶ 1} Appellant, Ryan Harrison Hooks, appeals his convictions and sentence in the Butler County Court of Common Pleas. For the reasons set forth below, we affirm the trial court's rulings.

{¶ 2} The Warren County Drug Taskforce ("WCDT") began investigating Hooks as a possible drug dealer in July 2018. On August 21, 2018, the WCDT arranged for a confidential informant ("CI") to perform a controlled purchase of an ounce of fentanyl from Hooks at Hooks' apartment in West Chester, Ohio. The CI was given money and was fitted

with a wireless transmitter. After purchasing the drugs, the CI confirmed that Hooks was the seller. The drugs were seized, weighed, and tested, and found to be a combination of heroin and fentanyl weighing 25.74 grams.

{¶ 3} A series of further controlled purchases was then arranged. On September 5, 2018, the CI purchased a mixture of heroin, fentanyl, and tramadol weighing 27.94 grams. At that time Hooks informed the CI that he also sold cocaine. On September 27, 2018, the CI purchased a mixture of heroin, fentanyl, diazepam, and tramadol weighing 27.95 grams. At that time Hooks also told the CI that Hooks usually received one brick of fentanyl at a time. On October 11, 2018, the CI purchased cocaine weighing 27.64 grams. On November 8, 2018, the CI purchased cocaine weighing 27.92 grams. Although they did not see Hooks during these transactions, the officers in the WCDT became familiar with Hooks' voice.

{¶ 4} On November 15, 2018, the WCDT executed a search warrant for Hooks' apartment. As officers approached the residence, Hooks attempted to flee. As he fled, Hooks removed a baggie from his pocket and dumped the contents (later found to be cocaine) on the ground. Hooks was arrested and placed in the back of a police cruiser. Officers then searched Hooks' apartment and garage, finding both a large bag of white powder and a bag containing a Ruger firearm and suspected narcotics. In total, officers recovered the firearm and four bags of drugs, one containing 21.32 grams of cocaine; one containing 105.47 grams of heroin, fentanyl, cocaine, and diazepam mixture; and two bags of cocaine with a combined weight of 85.56 grams.

{¶ 5} Hooks was indicted on four counts of trafficking in heroin, four counts of possession of heroin, three counts of trafficking in cocaine, three counts of possession of cocaine, and one count of having weapons under disability. Because of the quantity of drugs, four of the counts alleged that Hooks qualified as a Major Drug Offender ("MDO").

Because of the proximity of Hooks' apartment to Lakota West High School, two of the counts carried a school enhancement specification. At trial, the jury heard testimony from eight officers in the WCDT, including Detective Dan Schweitzer, of the Warren County Sherriff's Office, and Detective Greg Spanel, of the Lebanon Police Department. There was also testimony from three toxicologists employed at the Miami Valley Regional Crime Lab. Following a five day trial, a jury found Hooks guilty of all counts. The trial court merged the possession counts into the corresponding trafficking counts, and sentenced Hooks to serve a mandatory term of 24 years in prison.

{¶ 6} Hooks now appeals his conviction and sentence, raising three assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT IMPOSED AN UNLAWFUL SENTENCE.

{¶ 9} In his first assignment of error, Hooks makes two different arguments. First, he contends that the trial court erred by imposing an MDO sentence without an R.C. 2941.1410(A) MDO specification. Next, he argues that the state failed to present sufficient evidence to prove the school premises enhancement. Because Hooks' second argument under this assignment of error is also brought under his second assignment of error, we will address the MDO sentence here and the school-premises sufficiency argument in our discussion of his second assignment of error.

**MDO Finding**

{¶ 10} Hooks first argues that the trial court erred by imposing an MDO sentence without an MDO specification attached to Counts 11 and 13 of the indictment. Hooks claims that R.C. 2941.1410 requires language which explicitly states that the grand jury must find an MDO specification applies, and that the failure to conform the indictment to R.C. 2941.1410 deprives the trial court of jurisdiction to find that he is an MDO and deprives him

- 3 -

of notice that he is charged as an MDO.

{¶ 11} Section 10, Article I of the Ohio Constitution provides that "no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury." Crim.R. 7(B) explains the structure and sufficiency requirements of an indictment: "The statement [of the offense(s)] may be made in ordinary and concise language without technical averments or allegations not essential to be proved." "The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." *Id.* "The purpose of a grand jury indictment has always been to give notice to the accused." *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, ¶ 10. Specifically, "[t]he purposes of an indictment are to give an accused adequate notice of the charge, and enable an accused to protect himself or herself from any future prosecutions for the same incident." *State v. Buehner,* 110 Ohio St.3d 403, 2006-Ohio-4707, ¶ 7.

{¶ 12} Major Drug Offender means "an offender who is convicted of or pleads guilty to the possession of, sale of, or offer to sell any drug, compound, mixture, preparation, or substance" which may consist of or contain certain quantities of controlled substances, including "at least one hundred grams of cocaine," "one hundred grams of heroin," or "one hundred grams of a fentanyl-related compound." R.C. 2929.01(W); *see also* R.C. 2925.01(DD). Generally, "the determination by a court that an offender is a major drug offender is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender is a major drug offender." R.C. 2941.1410(A). Such a specification "shall be stated at the end of the body of the indictment, count, or information" in the form outlined in the statute. *Id.* However, R.C. 2941.1410(A) provides an exception to the specification requirement where an offender is charged pursuant to R.C.

- 4 -

2925.03, 2925.11, or 2925.05(E)(1).[1]

**{¶ 13}** Hooks was found guilty of trafficking in cocaine in violation of R.C. 2925.03(A)(2) (Count 11); possession of cocaine in violation of R.C. 2925.11(A) (Count 12); trafficking in heroin in violation of R.C. 2925.03(A)(2) (Count 13); and possession of heroin in violation of R.C. 2925.11(A) (Count 14). None of these counts contained an R.C. 2925.1410(A) MDO specification. Following Hooks' conviction, the trial court merged Counts 11 and 12, and Counts 13 and 14. While the language of the remaining counts— 11 and 13—did not include an R.C. 2925.1410(A) MDO specification, the language of each count mirrors the language of the offenses excepted from the MDO specification requirement of R.C. 2941.1410(A).

**{¶ 14}** Specifically, the language of Count 11 mirrors that of R.C. 2925.03(C)(4)(g), which provides that "[i]f the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine," whoever violates R.C. 2925.03(A) "is guilty of trafficking in cocaine." The penalty is determined based upon whether the amount of cocaine "equals or exceeds one hundred grams of cocaine." *Id.* Possession of the cocaine is thereby "a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term." *Id.* Count 11 of the indictment provided that "Hooks did knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute cocaine," and that "the amount of the drug involved equals or exceeds one hundred grams of cocaine." It further states that the offense charged is a first degree felony for "trafficking in cocaine" and that "the offender is a major drug offender."

**{¶ 15}** Similarly, the language of Count 13 mirrors that of R.C. 2925.03(C)(6)(g),

---

1. In setting forth the MDO specification requirements, R.C. 2941.1410(A) begins by providing, "Except as provided in sections 2925.03 and 2925.11 and division (E)(1) of section 2925.05 of the revised Code * * *."

which provides that "[i] If the drug involved in the violation is heroin or a compound, mixture, preparation, or substance containing heroin," whoever violates R.C. 2925.03(A) "is guilty of trafficking in heroin." The penalty is determined based upon whether the amount of heroin "equals or exceeds one thousand unit doses or equals or exceeds one hundred grams." *Id.* Possession of the heroin is thereby "a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term." *Id.* Count 13 of the indictment provided that "Hooks did knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute heroin," and that "the amount of the drug involved equals or exceeds one thousand unit doses or equals or exceeds one hundred grams." It further states that the offense charged is a first degree felony for "trafficking in heroin" and that "the offender is a major drug offender."

{¶ 16} We find that because R.C. 2941.1410(A) provides an exception to the MDO specification requirement where an offender is charged pursuant to R.C. 2925.03, Counts 11 and 13 did not require an R.C. 2925.1410(A) MDO specification. The language of each count mirrors the language of R.C. 2925.03(C)(4)(g) and (6)(g), thus providing more than sufficient notice to Hooks as to the offenses with which he was charged, and satisfies the requirements of Crim.R. 7(B). Hooks was duly convicted by a jury of trafficking in cocaine and heroin in amounts exceeding 100 grams. The jury made special findings as to these facts; these findings were not made by the trial judge.[2] There is no merit to Hooks' first argument. As such, his first assignment of error is overruled as to the MDO specification

---

2. We find no merit to Hooks' argument that R.C. 2941.1410(C) violates his right to trial by jury as recognized by the U.S. Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, (2000) and *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151 (2013). As described above, Hooks was not convicted of an MDO specification under R.C. 2941.1410, nor found by the court to be an MDO, but rather found by the jury to be an MDO pursuant to his convictions under R.C. 2925.03(C)(4)(g) and (6)(g), both of which are excepted from R.C. 2925.1410(A).

argument.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE.

{¶ 19} Hooks next argues, under both his first and second assignments of error, that the state failed to present sufficient evidence to prove the school enhancement. As such, Hooks argues he could only be convicted of second-degree felony trafficking in Counts 1, 3, and 5, rather than the first-degree felony trafficking counts of which he was found guilty. Hooks makes no argument regarding the admissibility of the Google Maps images introduced to show that the transactions occurred "in the vicinity of a school premises." Instead, he argues that the map and accompanying testimony is insufficient to prove the school enhancement.

**School Enhancements**

{¶ 20} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Tolle*, 12th Dist. Preble No. CA2020-10-015, 2021-Ohio-3401, ¶ 9. When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Roberts*, 12th Dist. Warren No. CA2020-12-089, 2021-Ohio-3073, ¶ 12. The relevant inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Terry*, 12th Dist. Warren No. CA2021-04-029, 2021-Ohio-4043, ¶ 9.

{¶ 21} R.C. 2925.03(C)(6)(e) provides that "if the amount of the drug involved equals or exceeds one hundred unit doses but is less than five hundred unit doses or equals or exceeds ten grams but is less than fifty grams," then trafficking in heroin is a second degree

felony, for which the court "shall impose as a mandatory prison term a second degree felony mandatory prison term." However, "[i]f the amount of the drug involved is within that range and if the offense was committed in the vicinity of a school [or] in the vicinity of a juvenile," then trafficking in heroin is a first degree felony, for which the court "shall impose as a mandatory prison term a first degree felony mandatory prison term." *Id.* Because the school enhancement specification increases the felony level for the offense, it must be separately established beyond a reasonable doubt. *State v. Howard*, 12th Dist. Warren No. CA2012-04-034, 2013-Ohio-1489, ¶ 55. As such, it is '"an essential element of the state's case-in-chief."' *State v. Watson*, 12th Dist. Butler CA2016-07-138, 2017-Ohio-1402, ¶ 23, quoting *Howard* at ¶ 55.

{¶ 22} An offense is "committed in the vicinity of a school" if the offender commits the offense "within one thousand feet of the boundaries of any school premises, regardless of whether the offender knows the offense is being committed * * * within one thousand feet of the boundaries of any school premises." R.C. 2925.01(P). "School premises" is defined as "[t]he parcel of real property on which any school is situated, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted on the premises at the time a criminal offense is committed." R.C. 2925.01(R)(1).

{¶ 23} Hooks was found guilty of three counts of trafficking in heroin in violation of R.C. 2925.03(A)(1) (Counts 1, 3, and 5). Each count alleges that the offense "was committed in the vicinity of a school" in accordance with R.C. 2925.03(C)(6)(e). As such, these charges were elevated from second degree felonies to first degree felonies. Detective Schweitzer testified that all five transactions between Hooks and the CI occurred at the same address, that address being Hooks' apartment. Detective Schweitzer further testified about the proximity of the apartment to Lakota West High School. Two images from Google Maps were introduced during his testimony. These images depicted the area of West

Chester including Hooks' apartment where the heroin sales took place and Lakota West High School. Detective Schweitzer testified that these images fairly and accurately depicted the subject area of West Chester Township. Detective Schweitzer explained his process of using the program to measure the distance between the apartment and the school premises, which was less than 1,000 feet. Hooks did not object to the admissibility of Detective Schweitzer's testimony or the Google Maps images.

{¶ 24} Hooks now argues that the state failed to prove his vicinity to a school premises, specifically contending that an officer must have firsthand information about distance to prove a school enhancement, and that the use of Google Maps is insufficient to prove the school enhancement.

{¶ 25} We are concerned here with only whether Schweitzer's testimony and the Google Maps images were sufficient evidence that Hooks' drug sales occurred within 1,000 feet of the boundaries of a school premises. That is, whether such evidence, if believed, would convince the average mind of Hooks' guilt beyond a reasonable doubt. We find that such evidence is sufficient for the jury to find that Hooks trafficked in drugs in the vicinity of a school.[3] The Google Maps images, depicting the proximity of Hooks' apartment to Lakota West High School, in conjunction with Detective Schweitzer's testimony that the images were fair and accurate depictions of the area and the process he followed in calculating the distance, if believed, prove that Hooks sold drugs within 1,000 feet of Lakota West High School premises. The Google Maps images and Detective Schweitzer's testimony adequately identified the premises upon which Lakota West High School is situated and outlines property boundaries. Obviously, instruction, extracurriculars and educational

---

3. This holding should not be construed as an endorsement of the method employed by the state to prove that Hooks trafficked drugs in the vicinity of a school or the admissibility of the Google Maps images and Detective Schweitzer's testimony regarding the vicinity of a school element of the offenses. As stated, Detective Schweitzer's testimony and the Google Maps images were admitted into evidence without objection. We find only that this admitted evidence was sufficient.

training occur at a high school. The other issues raised by Hooks regarding Detective Schweitzer's testimony and the Google Maps images go to admissibility and weight, issues with which we are not concerned in determining sufficiency.

{¶ 26} For these reasons, we overrule Hooks' first and second assignments of error as regards sufficiency of the evidence offered in support of the school enhancement.

**Toxicology**

{¶ 27} Hooks next argues that the state's three toxicologists failed to state that their opinions on controlled substances and weight were made within a reasonable degree of scientific certainty, and that consequently, there was insufficient evidence to prove that Hooks trafficked heroin and cocaine.

{¶ 28} Evid.R. 702 provides that a witness may testify as an expert if (1) the witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons; (2) the witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and (3) the witness' testimony is based on reliable scientific, technical, or other specialized information. *State v. Cooperstein*, 12th Dist. Warren No. CA2018-09-117, 2019-Ohio-4724, ¶ 50. "The qualifications which may satisfy these requirements are 'multitudinous.'" *State v. McCrone*, 12th Dist. Warren No. CA2018-01-007, 2019-Ohio-337, ¶ 32, quoting *State v. Mack*, 73 Ohio St.3d 502, 511 (1995).

{¶ 29} Three forensic scientists testified as to the content and weight of the drugs seized in the controlled purchases. Each of the three experts testified as to their qualifications, and the methodology of the tests they performed to determine the content and weight of the drugs seized following the controlled purchases from Hooks.

{¶ 30} The first expert, Todd Yoak, testified that he was a forensic chemist with Miami Valley Regional Crime Lab ("MVRCL") with 16 years of experience in that capacity. He also

testified that he had a Master of Science ("M.S.") degree in forensic science, that he had previously served as an expert witness approximately 80 times, and that his analysis of the drugs in this case occurred in his capacity as a forensic chemist at MVRCL.

{¶ 31} Yoak was asked by the state, "And your conclusion that it does or does not contain that particular drug, it [*sic*] that done to a reasonable degree of scientific certainty?" Yoak answered that he was confused, and the state acknowledged it was "a poorly worded question" then rephrased the question, "[A]re you then able to say, to the best of your ability *as a forensic chemist*, that the substance you've analyzed is what you say it is?" (Emphasis added.) Yoak answered affirmatively, and the state repeatedly used the same phrasing, "the standard of being a forensic chemist" to ask Yoak about his other conclusions measuring the various batches of drugs.

{¶ 32} Later, when cross-examined by Hooks' trial counsel, Yoak stated "I am testifying * * * based on my training, education, and experience, I am confident that these items contain the drugs I identified on the report." He testified in response to another question on cross examination that he does "the same testing on everything in the same analytical scheme," agreeing with Hooks' trial counsel that such testing is "what's generally done in the scientific community."

{¶ 33} The next expert witness was Hillary Loucks, who was also forensic chemist at the MVRCL with 4.5 years of experience in that capacity. Loucks testified that she had a Bachelor of Science ("B.S.") in forensic science with an emphasis on chemistry, that she had previously testified as an expert on seven occasions, and that her conclusions regarding the content and weight of the drugs in the report submitted as an exhibit represented conclusions "as a forensic chemist."

{¶ 34} Finally, Jennifer Watson testified that she served as the Chemistry Technical Leader at the MVRCL, where she was responsible for ensuring the quality of the testing

performed at the lab.  She had fifteen years of experience at the time of the trial, and in her role, she also performed the duties of a forensic chemist.  Watson testified that she had a B.S. in forensic science and prior experience testifying as expert.

{¶ 35} All three expert witnesses laid out their credentials and experience, and all three testified that they reached their conclusions regarding the drugs based upon those qualifications.  Nonetheless, "[t]he state's failure to more effectively present [the] witness' testimony to the trier of fact is vexing to this court."  *State v. Gagaris*, 12th Dist. Butler No. CA2007-06-142, 2008-Ohio-5418, ¶ 29.  However, having reviewed the evidence in the record in the light most favorable to the state, we find that any rational trier of fact could have found the identity of the substances proven beyond a reasonable doubt.  *Id.*

{¶ 36} While it is true that the witnesses did not verbatim affirm that their findings regarding the content and weight of the drugs "were made within a reasonable degree of scientific certainty," their testimony regarding their credentials and the scientific testing they performed, rendered their testimony compliant with the strictures of Evid.R. 702.  Witnesses need not make a talismanic incantation concerning their scientific certainly where their testimony has otherwise established that they are speaking pursuant to their "specialized knowledge, skill, experience, training, or education."  Evid.R. 702(B).

{¶ 37} Hooks' second assignment of error is without merit and is therefore overruled.

{¶ 38} Assignment of Error No. 3:

{¶ 39} THERE WERE CUMULATIVE ERRORS AT TRIAL THAT DEPRIVED HOOKS OF HIS RIGHTS TO EFFECTIVE ASSISTANCE AND DUE PROCESS UNDER THE FEDERAL AND OHIO CONSTITUTIONS.

{¶ 40} Hooks next argues that cumulative errors by his trial counsel and the trial court implicated his right to a fair trial, entitling him to a reversal of his convictions.  Specifically, he asserts error in (1) the trial court preventing Hooks' counsel from eliciting evidence about

the circumstances of Hooks' confession; (2) admission of the toxicologists' opinions about the controlled substances without Evid.R. 702(C) testimony about reliability; (3) the trial court's failure to provide a jury instruction on the definition of a school premises and counsel's failure to request such an instruction; (4) admission into evidence of four judgment entries reflecting Hooks' four prior stipulated felony convictions; (5) the trial court's finding Hooks to be an MDO rather than submitting the issue to the jury; (6) admission of Detective Spanel's testimony that Hooks agreed to cooperate with officers for case consideration but did not follow through; and (7) admission of Detective Schweitzer's testimony that Hooks had sold fentanyl and that it was a dangerous substance that caused deaths.

{¶ 41} At the outset, "[w]e note with disapproval appellant's shotgun approach of raising several, unrelated issues under the guise of cumulative errors in one assignment of error, instead of properly raising specific issues in separate assignments of error." *State v. Wilson*, 12th Dist. Warren No. CA2018-03-022, 2019-Ohio-338, ¶ 24; s*ee also* 12th Dist.Loc.App.R. 11(B)(3).

{¶ 42} Under the doctrine of cumulative errors, a judgment may be reversed if the cumulative effect of errors deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute cause for reversal. *State v. Myers*, 12th Dist. Warren No. CA2019-07-074, 2021-Ohio-631, ¶ 152. Harmless or nonprejudicial errors cannot become prejudicial by sheer number of alleged errors alone. *State v. Turner*, 12th Dist. Brown No. CA2019-05-005, 2020-Ohio-1548, ¶ 58. In addition, "[i]t is not enough simply to intone the phrase 'cumulative error.'" *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 197. We will address each error Hooks alleges.

{¶ 43} As suggested above, Hooks' claim of reversible cumulative error is based in part upon ineffective assistance of counsel in failing to object to certain testimony and evidence. To establish ineffective assistance of counsel, appellant must show (1) deficient

performance by counsel, that is, performance falling below an objective standard of reasonable representation, and (2) prejudice, that is, a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *State v. King*, 12th Dist. Clermont No. CA2022-01-001, 2022-Ohio-3388, ¶ 37. The failure to satisfy either the deficiency prong or the prejudice prong of the test is fatal to a claim of ineffective assistance of counsel. *State v. Schenck*, 12th Dist. Preble No. CA2021-02-003, 2022-Ohio-430, ¶ 29.

{¶ 44} We first note that Hooks' fifth purported error is duplicative of his argument already addressed in this opinion. As previously established, because R.C. 2941.1410(A) provides an exception to the MDO specification requirement where an offender is charged pursuant to R.C. 2925.03, Counts 11 and 13 did not require an R.C. 2925.1410(A) MDO specification. The jury made the necessary findings for the MDO label to attach, not the trial court. This argument is without merit.

1. *Miranda* Evidence

{¶ 45} Hooks first challenges the trial court's decision to sustain the state's objection to trial counsel's inquiry regarding Hooks' custodial statements to officers. In cross examining Detective Spanel, Hooks' trial counsel asked whether Detective Spanel had delivered *Miranda* warnings to Hooks. Counsel then inquired if the detective had told appellant that he had the right to an attorney. The state objected to both questions on the basis of relevance, arguing that not only had Detective Schweitzer previously testified that he delivered *Miranda* warnings, but the trial court had already previously ruled on the admissibility of Hooks' statements in disposing of a prior motion to suppress evidence. As such, the trial court sustained the state's objection.

{¶ 46} The admissibility of evidence is within the sound discretion of the trial court and the trial court is entitled to our deference in making decisions upon the admissibility of

evidence. *State v. Proffitt*, 12th Dist. Butler Nos. CA2016-07-134 and CA2016-07-135, 2017-Ohio-1236, ¶ 41. As such, a trial court's decision admitting evidence will not be reversed absent an abuse of discretion. *State v. May*, 12th Dist. Warren No. CA2019-01-004, 2019-Ohio-4513, ¶ 8. An abuse of discretion is more than an error of law, it implies that the decision was unreasonable, arbitrary, or unconscionable. *State v. August*, 12th Dist. Warren No. CA2018-12-136, 2019-Ohio-4126, ¶ 21.

{¶ 47} Hooks does not identify any substantial prejudice suffered as a result of the trial court's decision to sustain the state's objection. That is, he does not identify what he would have accomplished if the trial court had not sustained the objection. Hooks had already filed a motion to suppress, which had been denied following a pretrial hearing. Appellant may have sought to undermine the weight of his statement, but appellant had already been advised of Miranda by the time he made his statements.

2. Toxicologists' Opinions

{¶ 48} Hooks next challenges both the admissibility of the toxicologists' statements "without testimony under Rule 702(C) about reliability" and his trial counsel's failure to object to the statements. This is slightly different from his sufficiency challenge addressed above and we address these arguments accordingly.

{¶ 49} A trial court's role in determining whether an expert's testimony is admissible under Evid.R. 702(C) focuses on whether the opinion is based upon scientifically valid principles, not on whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof at trial. *State v. Hawkins*, 12th Dist. Warren No. CA2020-07-039, 2021-Ohio-3072, ¶ 35. The decision to admit or exclude expert testimony lies within the sound discretion of the trial court. *State v. Ritchie*, 12th Dist. Warren No. CA2017-11-155, 2018-Ohio-4256, ¶ 94.

{¶ 50} As established above, the testimony of the expert witnesses regarding their

credentials and the scientific testing they performed rendered their testimony compliant with Evid.R. 702. As such, we find that the trial court did not abuse its discretion in admitting the testimony, and trial counsel's failure to object does not constitute error. This argument is meritless.

### 3. Jury Definition of School Premises

**{¶ 51}** Hooks next argues that because there was no jury instruction on the definition of a school premises, he "lost the opportunity to argue for reduced offenses." A "school premises" definition is not included as a standard jury instruction by OJI. *See Ohio Jury Instructions*, CR Section 525.03 (Rev. Nov. 18, 2017). Moreover, there is no indication that such an instruction would be helpful to Hooks. As noted above, "[s]chool premises" is defined as "[t]he parcel of real property on which any school is situated, whether or not any instruction, extracurricular activities, or training provided by the school is being conducted on the premises at the time a criminal offense is committed." R.C. 2925.01(R)(1). The Google Maps image admitted into evidence depicted the school's location with a distance line drawn from the edge of the property to Hooks' apartment.

**{¶ 52}** Hooks argues that the school-premises definition "required the State to prove the school boundaries, the real-estate parcel that housed the school building, or a real-estate parcel owned by the district used for instruction, extracurriculars, or training." This argument adds requirements to the statute, which only requires the state to prove that an offender committed the offense "within one thousand feet of the boundaries of any school premises." R.C. 2925.01(P).

**{¶ 53}** Instructing the jury that "school premises" refers to that parcel of real property on which a school is situated would not have opened additional arguments to Hooks. Hooks was not precluded from arguing to the jury that the Google Maps images and Detective Schweitzer's testimony did not prove beyond a reasonable doubt that Hooks committed the

trafficking offenses in the vicinity of a school because the state presented no property boundary evidence. This assumes that the jury would have placed some practical significance to the use of the term "parcel" as opposed to the term "premises" and that the state would have been unable to rely upon the Google Maps images as depicting the "parcel" of real property upon which Lakota West High School is situated. No real estate parcel evidence is required to prove a school-premises specification. As we previously noted, "there are other ways to determine the distance between two points." *State v. Franklin*, 164 Ohio App.3d 758, 2005-Ohio-6854, ¶ 10 (12th Dist.). The trial court did not err in failing to instruct the jury on the definition of a school premises.

### 4. Felony Stipulations

{¶ 54} Hooks next argues that the trial court erred by permitting four judgment entries reflecting his prior felony drug convictions to go to the jury as evidence. Hooks stipulated to the convictions, and the state submitted certified copies of the judgment entries reflecting Hooks' prior convictions into evidence. The trial court instructed the jury that its consideration of Hooks' prior convictions was limited to the prior conviction element of the having weapons under disability offense.

{¶ 55} The Ohio Supreme Court previously held that a trial court abuses its discretion when "it refuses a defendant's offer to stipulate to the fact of the prior conviction or indictment and instead admits into evidence the full record of the prior judgment or indictment when the sole purpose of the evidence is to prove the element of the defendant's prior conviction or indictment." *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, ¶ 40. The state asserts that admission of the judgment entries was not erroneous because Hooks' stipulation was only to their admissibility, not to the fact of his prior convictions. Thus, the state argues that the judgment entries were necessary to prove the prior conviction element of the having weapons under disability offense. However, the record

belies the state's assertion. It is apparent that Hooks stipulated to the fact of his prior convictions, rendering admission of the judgment entries a *Creech* violation.[4]

{¶ 56} Hooks contends that he was denied effective assistance of counsel because trial counsel permitted the judgment entries to go to the jury.[5] However, even if we were to find counsel's performance deficient in this regard, based on the overwhelming evidence presented against him, Hooks cannot show any resulting prejudice.[6] *State v. Rodriguez*, 12th Dist. Butler No. CA2008-07-162, 2009-Ohio-4460, ¶ 72; *see also State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, ¶ 137. To the extent that Hooks is claiming error separate from his ineffective assistance argument, his trial counsel's errors are harmless for the same reasons. *State v. Haynes*, 12th Dist. Butler No. CA2010-10-273, 2011-Ohio-5743, ¶ 11.

{¶ 57} We find no error here.

### 5. Detective Spanel's Testimony

{¶ 58} Hooks next argues that Detective Spanel's testimony that Hooks agreed to cooperate with officers in exchange for consideration and subsequently failed to do so was improper and prejudicial. Testimony established that Hooks provided police with information leading to a search warrant yielding 1000 grams of a controlled substance, but that he did not provide further assistance. The testimony concerning Hooks' promise of cooperation with police was first elicited during Hooks' cross-examination of Detective Spanel. On re-direct, Detective Spanel testified that Hooks had directed officers to a house

---

4. The assistant prosecutor stated the parties' stipulation in the presence of the jury. As to all four judgment entries, the prosecutor stated that Hooks was the person named in each of the judgment entries and was convicted of possession of or trafficking in cocaine, as applicable.

5. Hooks maintains that the trial court did not instruct the jury concerning the limited purpose for which it may consider his prior convictions. However, the record indicates that in its final instructions to the jury, the trial court instructed the jury to limit consideration of prior convictions only for the purpose of satisfying the prior convictions element of Hooks' weapons under disability charge.

6. As the factual recitation indicates, the offenses for which Hooks was indicted arose from five controlled drug purchases and the execution of a search warrant at Hooks' residence.

and gave them the name of a drug dealer on November 15, 2018, but did nothing after that. This testimony was proper to rebut any impression that Hooks had rendered assistance to law enforcement who then reneged on the promise of consideration for Hooks' assistance. As such we find no error with the admission of the testimony nor with trial counsel's failure to object.

### 6. Detective Schweitzer's Testimony

{¶ 59} Hooks next argues that Detective Schweitzer's testimony regarding Hooks' sale of fentanyl, and the danger of fentanyl, was inappropriate and unfairly prejudicial because Hooks was not charged with possession or trafficking of fentanyl. However, the substances purchased from Hooks on at least three occasions contained fentanyl. As such, we find that the testimony was highly relevant and that its probative value was not substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). Trial counsel's failure to object likewise did not constitute error.

{¶ 60} Because we have found that no errors occurred during Hooks' trial, we find that Hooks was not deprived of a fair trial, and the cumulative error doctrine is inapplicable. Hooks' sixth assignment of error is overruled.

{¶ 61} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.