[Cite as *State v. Burson*, **2025-Ohio-499**.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

STATE OF OHIO,                                            :

    Appellee,                                      :               CASE NO. CA2024-08-006

    - vs -                                             :               O P I N I O N
                                                                             2/18/2025

                                                       :

WILLIAM ROBERT BURSON,                    :

    Appellant.                                     :


CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI 2023 2004


Zachary A. Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

Alana Van Gundy, for appellant.


**PIPER, J.**

{¶ 1}   Appellant, William Robert Burson, appeals from his conviction in the Brown County Court of Common Pleas after a jury found him guilty of two counts of third-degree felony operating a motor vehicle while under the influence of alcohol ("OVI"), both of which included a specification for certain repeat OVI offenders, as well as one count of fourth-degree felony failure to comply with an order or signal of a police officer, and one count of second-degree misdemeanor resisting arrest.  For the reasons outlined below, we

affirm Burson's conviction.

{¶ 2} On January 26, 2023, the Brown County Grand Jury returned an indictment charging Burson with the four above-named offenses and attached specifications. One of those offenses was OVI in violation of R.C. 4511.19(A)(1)(a). Another of those offenses was OVI in violation of R.C. 4511.19(A)(2). Neither R.C. 4511.19(A)(1)(a) nor 4511.19(A)(2) require the state to prove the defendant's blood alcohol content was above any prohibited blood alcohol level. Those statutes instead generally prohibit any person from operating a vehicle while under the influence of alcohol, a drug of abuse, or a combination of them. *Compare* R.C. 4511.19(A)(1)(a) and 4511.19(A)(2)(a) *with* R.C. 4511.19(A)(1)(b) (prohibiting any person from operating a vehicle within this state if, at the time of the operation, "[t]he person has a concentration of eight-hundredths of one per cent or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood").

{¶ 3} The charges arose on the evening of December 31, 2022, after a traffic stop was initiated on Burson's vehicle by Officer Caleb Wayne Savage of the Ripley Police Department. This stop was initiated by Officer Savage to investigate why Burson was revving his engine and doing "burnouts" in the parking lot of Brookie's Bar located within the village of Ripley. An intoxicated Burson fled, first in his vehicle, a Ford Mustang, and then on foot, which ultimately resulted in Burson entering the Red Oak Creek and developing symptoms of hypothermia.

{¶ 4} The record indicates that Burson eventually gave himself up following a tussle with Officer Savage and after the area surrounding the Red Oak Creek became inundated with law enforcement officers attempting to effectuate Burson's arrest. Upon taking Burson into custody, Burson was taken to the Mt. Orab Medical Center for treatment of his hypothermia. This resulted in medical staff taking Burson's blood, the

testing of which indicated Burson had a blood-alcohol level well above the legal limit of .08.

{¶ 5} On July 10, 2024, Burson filed a motion to suppress the results of his blood test conducted by staff at the Mt. Orab Medical Center. To support his motion, Burson argued that his medical records and "all testimony arising from his treatment" at the Mt. Orab Medical Center on the night of his arrest, December 31, 2022, be excluded from evidence at his upcoming trial since those records were purportedly obtained by the state via the procedure set forth under R.C. 2317.02(B)(2)(a) rather than by a properly executed search warrant.

{¶ 6} On July 12, 2024, the trial court issued a decision denying Burson's suppression motion. The trial court did this based on the good-faith exception to the exclusionary rule. In so doing, the trial court stated:

> While the Court has serious reservation how someone in custody for O.V.I. and taken to the hospital while in custody can have a legitimate expectation of privacy to those records. Notwithstanding the States (sic) reliance on the statutes to get these records was done in good faith therefore negating the application of the exclusionary rule.

{¶ 7} On July 15, 2024, the matter proceeded to a two-day jury trial. During the trial, the jury heard testimony from a total of three witnesses. Those three witnesses being the arresting officer, Officer Savage, the chief of toxicology for the Hamilton County Coroner's Office and Crime Laboratory, Robert Topmiller, and the defendant, Burson. Upon hearing this testimony, and following deliberations, the jury returned a verdict finding Burson guilty on all four charges and attached specifications. This includes the one count of OVI in violation of R.C. 4511.19(A)(1)(a) and the one count of OVI in violation of R.C. 4511.19(A)(2).

{¶ 8} On August 9, 2024, the trial court held a sentencing hearing where it

sentenced Burson to serve a total, aggregate term of eight years and five months in prison, less 587 days of jail time credit. The trial court also ordered Burson to pay a mandatory fine of $1,350, suspended Burson's driver's license for life, and notified Burson that he would be subject to an optional postrelease control term of up to two years following his release from prison. Four days later, on August 13, 2024, Burson filed a notice of appeal. Following briefing, on January 15, 2025, Burson's appeal was submitted to this court for review. Burson's appeal now properly before this court for decision, Burson has raised five assignments of error for review.

{¶ 9} Assignment of Error No. 1:

{¶ 10} DEFENSE COUNSEL WAS INEFFECTIVE FOR NOT CHALLENGING THE STOP.

{¶ 11} In his first assignment of error, Burson argues his trial counsel was ineffective for not challenging Officer Savage's initial stop of his vehicle as part of his motion to suppress. We disagree.

{¶ 12} "The standard by which we review claims of ineffective assistance of counsel is well established." *State v. Carter*, 72 Ohio St.3d 545, 557, 1995-Ohio-104. "To establish ineffective assistance, a defendant must show (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defendant." *State v. Kyles*, 2024-Ohio-998, ¶ 30 (12th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984).

{¶ 13} "Courts determine deficient performance by asking whether counsel's conduct 'fell below an objective standard of reasonableness.'" *State v. Smith*, 2024-Ohio-5752, ¶ 7 (12th Dist.), quoting *Strickland* at 688. When making this determination, the reasonableness of counsel's conduct must be judged based on "the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland* at 690. Only when counsel's

conduct was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" has counsel engaged in deficient performance. *Id.* at 687.

{¶ 14} On the other hand, to establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. This requires the errors to be so significant as to "undermine confidence in the outcome." *Id.* "A defendant's failure to make a sufficient showing of either prong of the *Strickland* inquiry is fatal to his claim of ineffective assistance." *State v. Lloyd*, 2022-Ohio-4259, ¶ 31.

{¶ 15} "The failure to file a motion to suppress is not per se ineffective assistance of counsel." *State v. Fluhart*, 2021-Ohio-3560, ¶ 52 (12th Dist.). Rather, "[t]o establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must be able to prove that there was a basis for suppression of the evidence in question." *State v. Satterwhite*, 2021-Ohio-2878, ¶ 37 (12th Dist.), citing *State v. Brown*, 2007-Ohio-4837, ¶ 65. "Thus, the failure to file a motion to suppress 'signifies ineffective assistance of counsel only when the record establishes that the motion would have been successful if made.'" *State v. Hunt*, 2021-Ohio-3400, ¶ 35 (12th Dist.), quoting *State v. Kelly*, 2007-Ohio-124, ¶ 25 (12th Dist.).

{¶ 16} But "even when there is some evidence in the record to support a motion to suppress, 'an appellate court presumes that defense counsel was effective if defense counsel could reasonably have decided that the motion to suppress would have been futile.'" *State v. DeHart*, 2019-Ohio-1048, ¶ 10 (12th Dist.), quoting *State v. Dominguez*, 2012-Ohio-4542, ¶ 20 (12th Dist.). This is because "[a]n attorney is not ineffective for failing to make a futile or frivolous request." *State v. Pack*, 2023-Ohio-3200, ¶ 17 (12th Dist.); *see, e.g., State v. White*, 2022-Ohio-2182, ¶ 14 (12th Dist.) (trial counsel was not

ineffective for failing to file a motion to suppress where counsel "could have determined that filing a motion to suppress . . . would have been a futile or frivolous act").

{¶ 17} Burson argues his trial counsel was ineffective for failing to challenge Officer Savage's initial stop of his vehicle as part of his motion to suppress. This is because, according to Burson, there was "absolutely no reason" for Officer Savage to initiate a traffic stop of his vehicle that evening. The record does not support this claim.

{¶ 18} The record instead establishes that Officer Savage had, at the very least, a reasonable and articulable suspicion to conduct an investigative stop of Burson's vehicle for reckless operation in violation of R.C. 4511.20(A) upon hearing Burson revving his vehicle's engine and performing multiple "burnouts" in front of a group of people standing outside Brookie's Bar located within the village of Ripley on the night in question, December 31, 2022. *See, e.g., State v. Burris*, 2008-Ohio-2168, ¶ 16-55 (5th Dist.) (deputy's traffic stop for the charged offense of reckless operation in violation of R.C. 4511.20[A] was "constitutionally valid" where the deputy observed the appellant conduct a "two second" burnout in a gravel parking lot located within the village of Utica "given the fact that the incident took place inside the village limits, when the lateness of the hour made for decreased visibility of any pedestrians and other vehicles").

{¶ 19} Therefore, because the record is lacking any basis upon which a motion to suppress Officer Savage's initial stop of Burson's vehicle could have been made, Burson's trial counsel reasonably could have determined that filing a motion to suppress the stop of Burson's vehicle would have been a futile or frivolous act. Accordingly, because an attorney is not ineffective for failing to make a futile or frivolous request, Burson's first assignment of error lacks merit and is overruled.

{¶ 20} Assignment of Error No. 2:

{¶ 21} THE COURT ERRED WHEN IT OVERRULED THE MOTION TO

SUPPRESS.

{¶ 22} In his second assignment of error, Burson argues the trial court erred by denying his motion to suppress his medical records generated from his treatment for hypothermia at the Mt. Orab Medical Center following his arrest on December 31, 2022. The trial court denied Burson's motion to suppress based on the good-faith exception to the exclusionary rule. In his brief, Burson makes no argument as to how this constituted an error on behalf of the trial court. That is to say, Burson makes no argument as to why it was error for the trial court to hold the exclusionary rule inapplicable to the case at bar based on that rule's good-faith exception.

{¶ 23} "[A]n appellant has the burden of demonstrating error on appeal through an argument that is supported by citations to legal authority and facts in the record." *State v. Phipps*, 2024-Ohio-4832, ¶ 13 (12th Dist.). The plain language found in App.R. 16(A)(7) makes this clear. *See State v. Thompson*, 2024-Ohio-2112, ¶ 25 (12th Dist.). It is therefore "not this court's duty to 'root out' or develop an argument that can support an assigned error, even if one exists." *Phipps.* This is because, as this court has stated previously, "[a]n appellate court is not a performing bear, required to dance to each and every tune played on an appeal." *State v. Powers*, 2021-Ohio-4357, ¶ 24 (12th Dist.). Accordingly, because Burson did not properly develop the issue within his brief, and because we decline to create an issue that was not otherwise argued, Burson's second assignment of error also lacks merit and is overruled.

{¶ 24} In so holding, we note that even without the admission of Burson's medical records into evidence, the record is still replete with evidence indicating Burson was under the influence of alcohol at the time he was pulled from the Red Oak Creek by law enforcement and placed under arrest. This includes, but is not limited to, evidence that Burson was stumbling and unable to stay upright as he fled from Officer Savage on foot

through the woods, that Burson exhibited a "very overwhelming" odor of alcoholic beverage coming from his person as he attempted to flee from Officer Savage into the woods, and that, during the subsequent inventory search of Burson's vehicle, Officer Savage found an empty beer can inside the car, several unopened cans of beer, and, on the center console area of the vehicle, an empty shot glass with a "fresh residue" of "some type of liquor," most likely Fireball.

{¶ 25} In this case, Burson's behavior reveals one incomprehensible decision after another that ultimately resulted in Burson risking his life and limb by jumping into the Red Oak Creek on a cold night in the dead of winter, thereby indicating Burson's truly intoxicated state.  However, because neither R.C. 4511.19(A)(1)(a) nor 4511.19(A)(2) required the state to prove the defendant's blood alcohol content was above any prohibited blood alcohol level, and given the overwhelming evidence establishing Burson's intoxication set forth above, it simply cannot be said the trial court's decision to deny Burson's motion to suppress had any bearing on the jury's eventual decision to find Burson guilty of either offense.  That is to say, because the jury found Burson guilty of OVI in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(2), and not, for example, R.C. 4511.19(A)(1)(b), the state did not have the burden of proving Burson's blood-alcohol content was above any prohibited blood alcohol level before a finding of guilt could be had, thus rendering the results of the Burson's blood draw conducted at Mt. Orab Medical Center generally immaterial to the case at bar.  *See generally State v. Perry*, 2017-Ohio-7214 (12th Dist.).  Thus, even if the blood-level concentration had been suppressed, sufficient evidence existed to establish impairment, thereby supporting Burson's conviction.

{¶ 26} Assignment of Error No. 3:

{¶ 27} THE STATE INTRODUCED INCORRECT AND PREJUDICIAL

INFORMATION IN BOTH OPENING AND CLOSING STATEMENTS.

**{¶ 28}** In his third assignment of error, Burson argues the state engaged in prosecutorial misconduct by introducing "incorrect" and "prejudicial information" in both its opening and closing statements. We disagree.

**{¶ 29}** "For a conviction to be reversed on the basis of prosecutorial misconduct, a defendant must prove the prosecutor's acts were improper and that they prejudicially affected the defendant's substantial rights." *State v. Warnock*, 2024-Ohio-382, ¶ 30 (12th Dist.), citing *State v. Elmore*, 2006-Ohio-6207, ¶ 62. This establishes a two-step inquiry requiring the defendant to prove both (1) that the prosecutor's conduct was improper and (2) that such improper conduct on behalf of the prosecutor subjected the defendant to prejudice. To demonstrate prejudice, the defendant must show that the prosecutor's conduct was so impactful that the outcome of the defendant's trial would clearly have been different had the prosecutor not engaged in such conduct. *State v. Kaufhold*, 2020-Ohio-3835, ¶ 42 (12th Dist.).

**{¶ 30}** The focus of such an inquiry, however, is not upon the culpability of the prosecutor. *State v. Combs*, 2020-Ohio-5397, ¶ 19 (12th Dist.). The inquiry is instead focused upon the fairness of the defendant's trial. *State v. Chisenhall*, 2024-Ohio-1918, ¶ 26 (12th Dist.). Therefore, a prosecutor's alleged misconduct "is not grounds for error unless the defendant has been denied a fair trial." *State v. Olvera-Guillen*, 2008-Ohio-5416, ¶ 27 (12th Dist.). That is to say, "a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial conduct." *State v. Carpenter*, 2023-Ohio-2523, ¶ 95 (12th Dist.). This is because a defendant is only "guaranteed a fair trial, not a perfect one." *State v. Miller*, 2021-Ohio-162, ¶ 45 (12th Dist.).

**{¶ 31}** Burson initially challenges the prosecutor commenting during opening

statements that:

> And I'm not gonna get into the weeds here, but Ohio has an implied consent law that says basically if you're operating a motor vehicle within this state, and a police officer asks you to submit to a chemical test, whether it's blowing into a machine, or a urine test, or a blood test, that you should give it.

Burson argues that this is an inaccurate characterization of the law, thereby automatically subjecting him to prejudice. However, even were we to assume that this was an inaccurate summation of the law underlying implied consent, which we do not, Burson never objected, thereby waiving all but plain error on appeal. *State v. Neal*, 2017-Ohio-1493, ¶ 26 (12th Dist.).

**{¶ 32}** Crim.R. 52(B) provides that plain errors "or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error means an obvious defect in trial proceedings that affected the defendant's substantial rights." *State v. Baker*, 2024-Ohio-2856, ¶ 39 (12th Dist.), citing *State v. Knodel*, 2007-Ohio-4536, ¶ 15 (12th Dist.). Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Grisham*, 2014-Ohio-3558, ¶ 38 (12th Dist.). No error occurred here, plain or otherwise, with the prosecutor's comment set forth above. This was instead merely the prosecutor providing the jury with a general overview of the law underlying implied consent, something that was neither inaccurate nor prejudicial to Burson. Therefore, Burson's initial argument lacks merit.

**{¶ 33}** Burson also challenges the prosecutor commenting during closing arguments that, "I would submit to you that somebody who's in a hypothermic state would be eliminating alcohol from his system at a slower rate of speed than a normal person." Burson argues that this statement amounted to the state itself "testifying" and providing "speculative evidence" to which his trial counsel appropriately objected and the trial court

erroneously overruled. However, even assuming this comment was improper, which it likely was given the testimony and evidence presented at trial, Burson has failed to establish how this comment subjected him to any resulting prejudice. That is to say, given the immateriality of Burson's blood-alcohol level to either OVI in violation of R.C. 4511.19(A)(1)(a) or 4511.19(A)(2), Burson has failed to establish that the outcome of his trial would clearly have been different had the prosecutor not made the above comment during its closing argument.

{¶ 34} This is particularly true here when considering the trial court instructed the jury, prior to the state presenting its closing argument, the following:

> And we are now going to proceed to closing arguments. Remember, how I said in voir dire, over and over again, that closing arguments are now what the attorneys think the evidence should mean to you. They've been provided copies of my Jury Instructions, so they understand what you're gonna be charged, as far as what the law is. So, they're able to argue what the facts, in their mind, were proven during this case or not proven. They are not evidence. Okay?

"A jury is presumed to follow instructions given by the trial court." *State v. Carpenter*, 2007-Ohio-5790, ¶ 20 (12th Dist.). Therefore, finding no merit to any of the arguments raised by Burson herein, Burson's third assignment of error also lacks merit and is overruled.

{¶ 35} Assignment of Error No. 4:

{¶ 36} THE COURT ABUSED ITS DISCRETION WHEN IT ALLOWED MR. TOPMILLER'S TESTIMONY TO CONSTITUTE AS EXPERT WITNESS TESTIMONY.

{¶ 37} In his fourth assignment of error, Burson argues the trial court erred by allowing Topmiller, the chief toxicology expert at the Hamilton County Coroner's Office and Crime Laboratory, to testify as an expert witness for the state. We disagree.

{¶ 38} Evid.R. 702 provides that a witness may testify as an expert if the witness

can assist the trier of fact in the search for truth and for which all the following apply:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; and
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.

**{¶ 39}** "The qualification of an expert depends upon the expert's possession of special knowledge that he or she has acquired either by study of recognized authorities on the subject or by practical experience that he or she can impart to the trier of fact." *State v. Fleming*, 2003-Ohio-7005, ¶ 21 (12th Dist.). The trial court is vested with broad discretion in its determination of the competency of an expert witness. *Id.* at ¶ 15, citing *Scott v. Yates*, 71 Ohio St.3d 219, 221, 1994-Ohio-462. Therefore, given the broad discretion afforded to the trial court, the trial court's "qualification of an expert witness will not be reversed unless there is a clear showing of an abuse of discretion on the part of the trial court." *State v. Staton*, 1999 Ohio App. LEXIS 3274, *20 (July 12, 1999) (12th Dist.). "An abuse of discretion is more than an error of law, it implies that the decision was unreasonable, arbitrary, or unconscionable." *State v. Hooks*, 2022-Ohio-4132, ¶ 46 (12th Dist.).

**{¶ 40}** Burson argues the trial court erred by allowing Topmiller to testify as an expert because Topmiller was never asked, and never testified to, whether he was "up to date in all certifications nor was he asked if he had completed annually required continuing education credits." Burson also argues the trial court erred by allowing Topmiller to testify as an expert witness because "he did not know how hypothermia would impact alcohol elimination or absorption, nor did he understand medical

terminology in the nurse's report." Burson, however, never objected to the trial court classifying Topmiller as an expert witness, thus waiving all but plain error on appeal. Nevertheless, even if Burson had objected to Topmiller's classification as an expert witness, we can find no error, plain or otherwise, in the trial court's decision to allow Topmiller to testify as an expert witness for the state in this case.

{¶ 41} Rather, after a thorough review of the record, which includes the transcript pages discussing Topmiller's vast experience as the current chief of toxicology for the Hamilton County Coroner's Office and Crime Laboratory, as well as Topmiller's three-page curriculum vitae, or resume, detailing his employment history, education, and training, the lack of an objection makes sense when considering Topmiller has been classified as an expert witness multiple times in the past. *See State v. Calo-Jimenez*, 2023-Ohio-2562, ¶ 10 (1st Dist.) (referring to Topmiller as "the child toxicology expert" at the Hamilton County Coroner's Office and Crime Laboratory). This includes by this court on appeal. *See State v. Cast*, 2022-Ohio-3967, ¶ 11 (12th Dist.) (noting a toxicology report was admitted into evidence along with Topmiller's "expert testimony"). Therefore, finding no error in the trial court's decision, Burson's fourth assignment of error lacks merit and is overruled.

{¶ 42} Assignment of Error No. 5:

{¶ 43} THE COURT ERRED WHEN IT DID NOT ACCURATELY CONSIDER THE SENTENCING FACTORS.

{¶ 44} In his fifth assignment of error, Burson argues the trial court erred by failing to "accurately consider" the sentencing factors set forth in R.C. 2929.11(A) and (B), thus resulting in the trial court imposing upon him an "excessive" prison sentence.

{¶ 45} To support this claim, however, Burson merely reiterates the same arguments that he made in his first four assignments of error discussed above. This

includes Burson arguing that sentencing him to serve a total, aggregate term eight years and five months in prison was error because, "[f]rom the record presented, it is very clear there was no reasonable suspicion or probable cause to even pull the vehicle over in the first place." This also includes Burson arguing that the trial court sentencing him to serve such a long prison sentence was error because "[t]he prosecution misstated a law in opening arguments and speculated as to something the 'expert' witness did not testify to, causing prejudice to Mr. Burson." This is in addition to Burson arguing that, given all of the supposed errors that occurred in this case, it would be well within this court's purview to reweigh the sentencing factors set forth in R.C. 2929.11(A) and (B) and provide him with a more "appropriate" sentence, i.e., a sentence that is less than the eight-year-and-five-month sentence that was imposed upon him by the trial court.

{¶ 46} But while Burson would like this court to reweigh those factors and provide him with a lesser sentence, there is nothing that would permit this court to independently weigh the evidence in the record and substitute our own judgment for that of the trial court to fashion a sentence other than the one imposed by the trial court. *See State v. Jones*, 2020-Ohio-6729, ¶ 42. This is because, as it is now well established, this court cannot reweigh the sentencing factors set forth in either R.C. 2929.11(A) or (B) on appeal. *State v. Crosby*, 2024-Ohio-3319, ¶ 15 (5th Dist.). The same holds true for the sentencing factors provided for in R.C. 2929.12. *State v. Jeanneret*, 2024-Ohio-2612, ¶ 19 (3d Dist.).

{¶ 47} We may only determine if the trial court's sentence is clearly and convincingly contrary to law. *See State v. Cochran*, 2024-Ohio-1997, ¶ 15 (10th Dist.). "A felony sentence is not clearly and convincingly contrary to law if the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible sentencing range." *State v. Jennings*, 2024-Ohio-383, ¶ 31 (12th Dist.). That is exactly

what the trial court did by sentencing Burson to serve a total, aggregate eight-year-and-five-month prison term in this case. Therefore, because the trial court's decision to sentence Burson is not clearly and convincingly contrary to law, Burson's fifth assignment of error lacks merit and is overruled.

**{¶ 48}** Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.